Citation Nr: AXXXXXXXX
Decision Date: 07/30/21 Archive Date: 07/30/21

DOCKET NO. 210507-158514
DATE: July 30, 2021

ORDER

Service connection for allergic rhinitis is granted.

An initial compensable disability rating for tension headaches is denied.

REMANDED

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

FINDINGS OF FACT

1. The evidence is at least in equipoise as to whether the Veteran's allergic rhinitis disorder was incurred in service or was otherwise causally or etiologically related to service.

2. Throughout the period on appeal, the Veteran's tension headaches have manifested pulsating, throbbing pain on both sides of the head, but did not exhibit characteristic prostrating attacks at any time.

CONCLUSIONS OF LAW

1. The criteria for service connection for allergic rhinitis have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for an initial compensable disability rating for tension headaches have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102; 4.14.14, 4.124, Diagnostic Code (DC) 8100.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from September 1953 to July 1955. 

This matter comes before the Board of Veterans' Appeals (BVA or Board) from a June 2020 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO).

The Veteran filed an initial claim of entitlement to service connection for allergic rhinitis and headaches in July 2019 and August 2019, respectively. The RO issued an August 2019 rating decision denying service connection for rhinitis, and, in an October 2019 rating decision, granted service connection for headaches, assigning a noncompensable, or zero percent, disability rating, effective from August 30, 2019.

In October 2019, the Veteran submitted a VA Form 20-0996, Decision Review Request: Higher-Level Review (HLR), and requested review of the August 2019 rating decision denying service connection for rhinitis. The RO issued an HLR RD in November 2019, again denying the claim. In February 2020, the Veteran submitted a VA Form 20-0995, Decision Review Request: Supplemental Claim, and requested review of the November 2019 rating decision based on new and relevant evidence. 

Regarding the claim for a higher initial disability rating for headaches, in December 2019, the Veteran filed a Supplemental Claim requesting review of the October 2019 rating decision that had assigned an initial noncompensable rating. 

In April 2020, the RO issued a supplemental rating decision in which it found that new and relevant evidence had been received to readjudicate both the claim for service connection for rhinitis and the claim for a higher initial disability rating for headaches, but continued denial of both claims. 

In June 2020, the Veteran submitted a VA Form 20-0996, Decision Review Request: Higher-Level Review (HLR), and requested review of the April 2020 rating decision. Initially, by way of correspondence sent to the Veteran in June 2020, the RO stated that HLR of the claims was unavailable, stating (incorrectly) that the Board had issued a decision with respect to the initial disability rating assigned for headaches, and stated that the Veteran could not file a request for HLR with respect to the service connection for rhinitis claim as an HLR rating decision had already been issued on that claim in November 2019. However, based on argument from the Veteran's attorney at a June 2020 Informal Hearing Conference, in June 2020, the RO issued the HLR rating decision on appeal, which considered the evidence of record at the time of the April 2020 rating decision. In the VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) (NOD), the Veteran elected the Direct Review option; therefore, the Board may only consider the evidence of record at the time of the June 2020 AOJ rating decision on appeal. 38 C.F.R. § 20.301.

This case has been advanced on the docket pursuant to 38 C.F.R. § 20.900.

1. Service connection for allergic rhinitis is granted.

The Veteran contends that his allergic rhinitis disorder is related to his service. Specifically, he has stated that he began having symptoms of runny nose, congestion, sinus pain, and headaches during active service, and that he has continued to experience those symptoms since service separation. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran's service treatment records (STRs) are unavailable, despite VA's multiple attempts to secure such records. The National Personnel Records Center (NPRC) has reported that the Veteran's records may have been destroyed in a fire at the Records Center in 1973. The Board notes that where records are lost or destroyed while in the possession of the government, the Board has a heightened duty to assist the Veteran in the development of his claim, explain its findings and conclusions, and to carefully consider the benefit of the doubt rule. Washington v. Nicholson, 19 Vet. App. 362, 369-70 (2005); Cromer v. Nicholson, 19 Vet. App. 215, 217 (2005). 

The Board has reviewed a private opinion from Dr. D., dated January 2020, in which the doctor opined that it is more likely than not that the Veteran's rhinitis disorder was caused by his service. The examiner provided the rationale that medical literature supported the existence of a nexus link between allergic rhinitis and exposure to extreme weather and dust. Such agents may cause inflammation in the upper respiratory airways. In addition, the doctor appeared to rely on the competent statements of the Veteran that his symptoms which are subject to lay observation began during active service. 

The Veteran was provided a VA examination for his allergic rhinitis disorder in April 2020. The examiner opined that it was less likely than not (less than 50 percent probability) that the Veteran's allergic rhinitis was incurred in or caused by his service. The examiner supported their opinion with the rationale that the Veteran's rhinitis had its onset in 2015, six decades after his separation from service, and that the Veteran had been followed at the VA hospital since 2000, but had not reported or received treatment for or diagnosis of rhinitis until 2015. The lengthy passage of time between the Veteran's service and the first manifestations of his rhinitis disorder weighs against the possibility of a nexus relationship. The Board finds this opinion to be highly probative in that it specifically cites to the Veteran's history and record. Additionally, the examiner's conclusion is supported by a clear rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (stating that most of the probative value of a medical opinion comes from its reasoning). 

However, in the June 2020 rating decision on appeal, the RO made favorable findings that (1) the Veteran has a current disability, i.e. allergic rhinitis, and (2) a nexus or link had been established between the Veteran's allergic rhinitis and his military service based on the January 2020 private nexus opinion. The Board is bound by these favorable findings, "unless rebutted by evidence that identifies a clear and unmistakable error in the favorable finding. For purposes of this section, a finding means a conclusion either on a question of fact or on an application of law to facts made by an adjudicator concerning the issue(s) under review." See 38 U.S.C. § 5104(a); 38 C.F.R. § 3.104(c). In light of the January 2020 favorable nexus opinion, the Board does not find clear and unmistakable error in the RO's favorable findings. 

Upon a thorough review of the evidence of record, the Board finds that evidence rests at least in equipoise with regard to whether service connection for allergic rhinitis is warranted. As noted above, the Board finds the January 2020 positive opinion to be less probative than the April 2020 negative nexus opinion because of the somewhat unclear rationale of the January 2020 opinion in assuming the Veteran's exposure to dust and wind and forming a general conclusion regarding a positive nexus based upon medical literature indicating such a link (instead of relying on specific facts in the Veteran's record). However, the Board reiterates that VA has a higher duty to assist the Veteran due to the Government's possible loss of the Veteran's records in a fire. As explained above, this heightened duty to assist includes helping the Veteran in the development of his claim, clearly explaining VA's findings and conclusions, and carefully considering the benefit of the doubt rule. Washington, 19 Vet. App. at 369-70; Cromer, 19 Vet. App. at 217. 

Based on this heightened duty to assist and especially because of the favorable finding of a positive nexus that has already been conceded by the RO and by which the Board is bound, the Board finds that the evidence has reached at least the point of equipoise, if not greater, and thus any remaining doubt shall be resolved in the favor of the Veteran. Thus, resolving doubt in favor of the Veteran, the Veteran's claim for service connection for allergic rhinitis is granted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53.

2. An initial compensable disability rating for tension headaches is denied. 

The Veteran generally asserts that he is entitled to a higher initial disability rating for his headaches, specifically because his symptoms are more severe than contemplated by the currently assigned ratings.

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.

Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt as to the degree of disability will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. It is permissible to switch diagnostic codes to reflect more accurately a claimant's current symptoms. See Read v. Shinseki, 651 F.3d 1296, 1302 (Fed. Cir. 2011).

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25. Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a Veteran's service-connected disability. 38 C.F.R. § 4.14. It is possible for a Veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes, however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994). 

Staged ratings are appropriate for an initial or increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that warrant different ratings. Fenderson v. West, 12 Vet. App. 119, 126-127 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

The rating schedule provides criteria for evaluating headaches as follows: a 10 percent rating is warranted for migraines with characteristic prostrating attacks averaging one in two months over last several months. A 30 percent rating is warranted for migraines with characteristic prostrating attacks occurring on an average once a month over last several months. A 50 percent rating is warranted for migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a, DC 8100.

Governing case law and regulations have not defined "prostrating." For reference, the Board notes that "prostration" is defined as "extreme exhaustion or powerlessness." See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1531 (32d. ed. 2012). 

The use of the conjunctive "and" in a statutory provision means that all of the conditions listed in the provision must be met. Melson v. Derwinski, 1 Vet. App. 334 (1991); Johnson v. Brown, 7 Vet. App. 95 (1994) (only one disjunctive "or" requirement must be met in order for a higher rating to be assigned). Here, each of the criteria listed in the 50 percent rating must be met in order to warrant a 50 percent rating. Tatum v. Shinseki, 23 Vet. App. 152 (2009).

As above, when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert, supra.

As noted above, the Veteran was granted service connection for tension headaches, effective August 30, 2019. The Veteran's tension headaches disability has been rating by analogy under DC 8100, which rates for migraines. 38 C.F.R. § 4.124a. The rating criteria under DC 8100 are discussed above. 

The Veteran was provided a VA examination for his headaches in September 2019. The examiner noted the Veteran's symptoms of pulsating/throbbing head pain, with pain on both sides of the head. The duration of the headache episodes was noted as lasting for less than one day. Prostrating type attacks were not found. 

The Veteran was provided another VA examination for his headaches in February 2020. The findings were similar to the October 2019 examination findings, with no evidence of worsening of the headaches, and, again, prostrating type attacks were not found.

A review of treatment records from the effective date of service connection, August 30, 2019, finds that the record is silent for any incidence of prostrating attacks. 

The Veteran submitted a November 2019 Headaches Disability Benefits Questionnaire completed by a private physician, Dr. D. Dr. D. noted that the Veteran experienced pulsating or throbbing head pain on both sides of the head that worsened with physical activity. Contrary to the 2019 and 2020 VA examination reports, Dr. D. indicated that, along with the headaches, the Veteran experienced nausea, vomiting, sensitivity to light, sensitivity to sound, changes in vision, and sensory changes. The duration of typical head pain was 1 to 2 days, and Dr. D. indicated that the Veteran experienced prostrating attacks of headache pain more frequently than once per month. Moreover, Dr. D. responded in the affirmative when asked if the Veteran had "very frequent prostrating and prolonged attacks of migraine headache pain." Finally, Dr. D. stated that the Veteran was unable to maintain gainful employment due to his prolonged and debilitating headaches. 

The Board finds that this private opinion is entitled to less probative weight than the other VA examinations on record. Dr. D.'s opinion is conclusory in nature and does not appear to have had the benefit of a review of the clinical evidence of record. Dr. D. simply states that the Veteran suffers from prostrating attacks more than once per month despite there being no support in the record for this. 

Conversely, the Board finds September 2019 and February 2020 VA examinations and opinions to be highly probative as the examiner reviewed the claims file, interviewed the Veteran, and provided an opinion supported by a clear rationale. Nieves-Rodriguez, 22 Vet. App. 295. The opinions cite to the record and directly reference the Veteran's history and casefile. Thus, the Board finds that Dr. D.'s opinion is outweighed by the more probative VA examinations of record, both of which make a finding against any incidence of prostrating attacks.

In assessing the severity of the Veteran's headaches, the Board has given due consideration to the competent lay assertions regarding symptoms experienced and observed. See, e.g., Layno v. Brown, 6 Vet. App. 465, 470 (1994) and Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). However, the criteria needed to support higher ratings involve medical findings that are within the province and purview of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-138 (1994). As such, the Veteran's lay assertions are not considered more persuasive than the objective medical findings which, as indicated above, do not support assignment of any higher rating pursuant to any applicable criteria at any point pertinent to this appeal. While the Veteran is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses, he is not competent to identify a specific level of disability of his headache condition according to the appropriate diagnostic codes. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno, 6 Vet. App. at 469.

The Board has also considered whether a further staged rating under Fenderson, supra, is appropriate for the Veteran's service-connected tension headaches; however, the Board finds that his symptomatology has been stable throughout the appeal period. Therefore, assigning a further staged rating for such disability is not warranted. Further, the Veteran and his representative have not raised any other issues, nor have any other issues been reasonably raised by the record, with regard to such claim. Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

Upon a thorough review of the record, the Board finds that the probative medical evidence of record preponderates against the Veteran's claim for increased rating. To warrant a compensable rating, the record must make a showing of prostrating attacks. To this end, the private opinion from Dr. D. affirmatively asserts the incidence of prostrating attacks. However, this opinion is directly contradicted by two adequate and probative VA opinions obtained within mere months of Dr. D.'s opinion. There is nothing else in the record that suggests the Veteran suffered from the "extreme exhaustion or powerlessness" or symptoms indicative of the same that is associated with a compensable rating for migraine/tension headaches, and no clinician has characterized the severity of the Veteran's headaches to be as such. The Board thus finds that a claim for increased rating is not supported to a degree of at least equipoise by the record. Accordingly, the Veteran's claim for increased rating for tension headaches must be denied.

Accordingly, the Board finds that the preponderance of the evidence is against the Veteran's claim for a compensable rating for tension headaches. Given that the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not for application. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, supra.

REASONS FOR REMAND

1. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded. 

The private opinion of Dr. D., referenced in the above section, noted that the Veteran was "unable to maintain gainful employment due to his prolonged and debilitating headaches condition." According to Rice v. Shinseki, 22 Vet. App. 447 (2009), a TDIU is akin to an increased rating claim, and that VA must take cognizance of the issue anytime the evidence of record raises the issue. In the instant matter, the evidence (i.e., the private opinion from Dr. D.) raises the possibility of the Veteran's preclusion from gainful employment. Thus, a claim for TDIU is raised as part and parcel of the headache disability rating claim. 

Dr. D.'s opinion put the RO on notice (prior to the June 2020 rating decision on appeal) that the Veteran may have been rendered unemployable due to his service-connected headaches disability. As such, the Board finds a pre-decisional duty to assist error in that the RO failed to assist the Veteran in development of a TDIU claim.

The issue of entitlement to a TDIU is remanded to correct a duty to assist error that occurred prior to the June 2020 rating decision on appeal.

As the RO has not developed or adjudicated the matter of whether the Veteran's service-connected disabilities render him unemployable, the Board finds a pre-decisional duty to assist error. The TDIU claim must be remanded to the RO for adjudication in accordance with the holding in Rice.

The matters are REMANDED for the following action:

1. The RO is asked to issue a notice letter to the Veteran concerning his claim for a TDIU. Additionally, ask the Veteran to fully complete a VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability.

2. Thereafter, the RO must adjudicate the Veteran's TDIU claim.

 

 

T. SHERRARD

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Kashif I. Ali, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.